**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**Case No.: 3:17-CV-00505**
**Judge Crenshaw/Brown**
**Jury Demand**


**MARTHA AMMONS**
**Plaintiff,**


**vs.**


**ALLY FINANCIAL, INC.**
**Defendant.**

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS…………………………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………………………………….iii

INTRODUCTION…………………………………………………………………………...1

STATEMENT OF MATERIAL FACTS………………………………………………….......3

LEGAL STANDARD…………………………………………………………………………..3

LEGAL ARGUMENT AND CITATIONS OF AUTHORITY…………………………………..4

    a.     THE PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO LIABILITY FOR DEFENDANT'S VIOLATIONS OF THE TCPA…………………………………………………………………………...5

          i.  U.S. CONNECTION OF THE CASE………………………………………...6

          ii.  USE OF AN ATDS OR PRERECORDED VOICE TO MAKE CALLS TO A CELL PHONE………………………………………………………………...6

          iii. DEFENDANT'S CALLS WERE NOT MADE FOR "EMERGENCY PURPOSES"……………………………………………………………..7

          iv. THE PLAINTIFF IS THE CALLED PARTY………………………………...7

          v.  ON MORE THAN ONE OCCASION, THE PLAINTIFF EFFECTIVELY REVOKED ANY "PRIOR EXPRESS CONSENT" DEFENDANT MAY HAVE BELIEVED IT HAD TO CALL HER CELLULAR TELEPHONE USING AN ATDS AND/OR PRERECORDED VOICE FOR PURPOSES OF COLLECTING A DEBT………………………………………………...8

    b.     THE PLAINTIFF IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS TO ALL DIALER GENERATED CALLS MADE TO PLAINTIFF'S CELL PHONE FROM DEFENDANT WITHOUT PLAINTIFF'S CONSENT………………………………….......................................12

c.     THE PLAINTIFF IS ENTITLED TO JUDGMNET AS A MATTER OF LAW AS TO DEFENDANT'S WILLFUL OR KNOWING VIOLATIONS OF THE TCPA…………………………………………………………………………..14

CONCLUSION……………………………………………………………………………...18

## **TABLE OF AUTHORITIES**

### **CASES**

- *Alea London Ltd. v. Am. Home Servs, Inc.*, 638 F. 3d 768 (11th Cir. 2011)………...14, 15

- *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………3, 4

- *Aslanidis v. U.S. Lines, Inc.*, 7 F. 3d 1067 (2d Cir. 1993)……………………………….4

- *Bally v. First Nat'l Bank of Omaha*, No. 17-10632, 2017 WL 4841402 (E.D. Mich. Oct. 26, 2017)……………………………………………………………………………………..8

- *Brathre v. Navient Solutions, Inc.*, 249 F. Supp. 1283 (M.D. Fla. 2017)………………..12

- *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014)……………………7

- *Celotex v. Catrett*, 477 U.S. 317 (1986)…………………………………………………...3

- *Charvat v. NMP, LLC*, 656 F. 3d 440 (6th Cir. 2011)…………………………………...15

- *Coniglio v. Bank of Am., N.A.*, 2014 WL 5266248 (M.D. Fla. 2014)……………………17

- *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F. 2d 174 (2d Cir. 1990)……………4

- *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010)…………………………………………………………………………………14

- *Gager v. Dell Fin. Servs, LLC*, 727 F. 3d 265 (3d Cir. 2013)……………………………2

- *Gottlieb v. County of Orange*, 84 F. 3d 511 (2d Cir. 1996)………………………………4

- *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012)…15, 17

- *Joffe v. Acacia Mortg. Corp.*, 121 P. 3d 371 (Ariz. Ct. App. 2005)………………………2

- *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-cv-11505, 2016 WL 6018403 (E.D. Mich. Nov. 7, 2011)………………………………………………………………………………...7

- *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370-71 (6th Cir. 2015)…………10

- *King v. Time Warner Cable*, 113 F. Supp. 3d 718 (S.D. N.Y. 2015)………………*passim*

- *Lary v. Trinity Physician Fin. & Ins. Servs*, 780 F. 3d 1101 (11th Cir. 2015)…………..15

- *Lesher v. Law Offices of Mithcell N. Kay, PC*, 650 F. 3d 993 (3d Cir. 2011)…………….3

- *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………..4

- *Mims v. Arrow Fin. Servs, LLC*, --US--, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)……...2

- *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014)……………………..7

- *Rodriguez v. DFS Servs, LLC*, No. 8:15-cv-2601-30-TBM, 2016 WL 269052 (M.D. Fla. Feb. 1, 2016)……………………………………………………………………………….8

- *Rule v. Brine, Inc.*, 85 F. 3d 1002 (2d Cir. 1996)……………………………………….4

- *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946 (9th Cir. 2009)…………………….2

- *Tillman v. Ally Fin., Inc.*, No. 2:16-cv-313-FTM-99CM, 2017 WL 5187748 (M.D. Fla. Nov. 9, 2017)………………………………………………………………………………12

- *Yount v. Midland Funding, LLC*, No. 2:14-cv-108, 2016 WL 55481 (E.D. Tenn. Feb. 10, 2016)……………………………………………………………………………………...12

## STATUTES & REGULATORY ORDERS

- 47 U.S.C. § 227……………………………………………………………………..*passim*

- Fed. R. Civ. P. 30……………………………………………………………………....11

- Fed. R. Civ. P. 56……………………………………………………………………..*passim*

Case 3:17-cv-00505   Document 69   Filed 02/02/18   Page 4 of 25 PageID #: 860

- *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 (2003)………………………………………………………...6, 7

- *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Soundbite Communications, Inc.*, 27 FCC Rcd 15391 (2012)………………………….3

- *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015)…………………………………………………………..*passim*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**MARTHA AMMONS,**

     **Plaintiff,**

**v.**                                **CASE NO: 3:17-0505**
                                          **Judge Crenshaw/Brown**

**ALLY FINANCIAL, INC.,**          **Jury Demand**

     **Defendant.**

_____/

### PLAINTIFF'S, MARTHA AMMONS', MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, the Plaintiff, MARTHA AMMONS, by and through her undersigned counsel, who respectfully requests an order of partial summary judgment against Defendant, ALLY FINANCIAL, INC., pursuant to Federal Rule of Civil Procedure 56, and states the grounds for partial summary judgment as follows:

### I. INTRODUCTION

The Plaintiff filed a Complaint [Doc. 1] against Ally Financial, Inc. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA"). Over a period of less than twenty eight (28) months, the Defendant called the Plaintiff at least five hundred seventy (570) times on her cellular telephone for the purposes of collecting an alleged debt related to an automobile loan.

It is well known in the debt collection industry that the use of robo-dialers is an easy and cheap way to bully and harass people to pay for alleged debts. It's hard to imagine a better example than this case where a company calls (and/or texts) a customer in excess of five hundred

1

seventy (570) times – with at least five hundred eighteen (518) of these automated calls (including an additional five (5) automated text messages) coming *after* the Plaintiff told Defendant to stop calling her cell phone on December 22, 2015. **Exhibit A** – Amended Affidavit of Martha of Ammons ¶ 11; **Exhibit B** – Martha Ammons' Deposition Transcript, 52:23-56:9; **Exhibit C** – Defendant's Response to Plaintiff's Second Set of Interrogatories, Response to Interrogatory No. 2; *see also* Complaint [Doc. 1] ¶ 20.

By enacting the TCPA, Congress intended to "protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012). Congress and the FCC have long recognized that robo-calls are extraordinarily aggravating when made to a cellular telephone. Unwanted calls are especially problematic when made to mobile phones, which are now ubiquitous. "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005). As such the FCC has continued to reiterate the distinction made by Congress when the TCPA was first enacted in 1991, "if a caller uses an autodialer or prerecorded message to make a non-emergency call to a wireless phone, the caller must have obtained the consumer's prior express consent or face liability for violating the TCPA." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶ 9, (2015) (hereinafter "FCC 2015"); 47 U.S.C. §227(b)(1)(A)(iii).

The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013); see also *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy); see also, *In the*

*Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Soundbite Communications, Inc.,* 27 FCC Rcd. at 15391–92 ¶ 2 (Nov. 26, 2012) (discussing TCPA's purpose of protecting consumers against unwanted contact from automated dialing systems). Because the TCPA is a remedial statute, it should be construed to benefit consumers. See *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011).

For the reasons outlined herein, Plaintiff is entitled to partial judgment as a matter of law as to Defendant's liability for violations of the TCPA and treble damages for Defendant's willful and/or knowing violations of the TCPA. Plaintiff respectfully requests that the Court reserve on the issue of punitive damages.

## II. STATEMENT OF MATERIAL FACTS

See Plaintiff Martha Ammons' Separate Statement of Material Facts in Support of Her Motion for Partial Summary Judgment.

## III. LEGAL STANDARD

Rule 56(c) mandates the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrates the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the non-moving party must "go beyond the pleadings" and designate facts in the record "showing that there is a genuine issue for trial." *Id.* at 324. In responding to a motion for summary judgment, the non-moving party "may not rest

3

upon mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must also do more than simply show that there exists some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Moreover, the non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita* 475 U.S., at 586-87), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

Under these standards, the undisputed facts of this case compel the conclusion that Plaintiff is entitled to partial summary judgment on Plaintiff's claims.

## IV. LEGAL ARGUMENT AND CITATION OF AUTHORITY

The facts in the record unequivocally demonstrate that Defendant called Plaintiff's cell phone using equipment which had the capacity to operate as a predictive dialer at least five hundred seventy (570) times (in addition to five (5) automated text messages) from August 31, 2014 through January 24, 2017. **Exhibit C**; **Exhibit F**, ALLY_000076-000176. Moreover, of those five hundred seventy (570) dialer generated calls, at least five hundred eighteen (518) (in

4

addition to five (5) automated text messages) came after Plaintiff unequivocally revoked consent for Defendant to call her cell phone on December 22, 2015. Even more egregious, at least two hundred thirty five (235) of those dialer generated calls were made after Plaintiff testified that she again unequivocally revoked consent for Defendant to call her cellular telephone number on September 22, 2016 and Defendant's own agent ("Dyrell Body") entered a permanent note on the account "dnc buyer!!!" next to the last four digits of Plaintiff's cell phone number.[1] *Id.*, ALLY_000132.

For the reasons comprehensively set forth below, the uncontroverted material facts demonstrate that Plaintiff is entitled to partial summary judgment as a matter of law on the matters discussed above.

### a. The Plaintiff Is Entitled To Judgment as a Matter of Law As to Liability For Defendant's Violations of the TCPA.

The first matter that the Plaintiff seeks summary judgment upon is that the five hundred eighteen (518) dialer generated telephone calls (in addition to five (5) automated text messages) made by Defendant to the Plaintiff's cellular telephone using equipment with the capacity to dial predictively and without Plaintiff's express consent for purposes of collecting an alleged debt constituted five hundred twenty three (523) separate violations of the TCPA, entitling the Plaintiff to the statutory minimum of $500.00 in statutory damages per call/text. The relevant provisions of the TCPA provide that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express

---

[1] Per Defendant's corporate representative, Diane Accurso, during her deposition on October 26, 2017 (and as commonly understood within the industry), "dnc" means "do not call". **Exhibit H**, 31:12-17.

consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. 47 U.S.C. §227(b)(1)(A)(iii). As will be shown below, all requirements of this statute have been demonstrated by evidence and no genuine issues of material fact remain.

### i. U.S. Connection of the Case.

As a preliminary matter, there is no dispute that the calls in question have the requisite U.S. connection required by the TCPA statute as the calls were made to a "recipient . . . within the United States" using a U.S. based (area code 615) cellular number. **Exhibit A**, ¶ 3; **Exhibit B**, 93:18-94:3.

### ii. Use of An ATDS or Prerecorded Voice to Make Calls to A Cell Phone.

The Defendant does not contest that Defendant utilized equipment with the capacity to dial predictively to call the Plaintiff's cellular telephone. The parties have entered into a Joint Stipulation of Facts which states in pertinent part that "telephone calls that were made by the Defendant to cell phone number (615) 486-1020 during the time frame it was owned by Martha Ammons were placed both manually and using a dialer. For only those telephone calls made using a dialer, the equipment had the capacity to operate as a predictive dialer."[2] **Exhibit G**.

Since 2003, the FCC has repeatedly acknowledged that a predictive dialer is an automatic telephone dialing system ("ATDS") for purposes of the TCPA. *See* 2003 TCPA Order ¶¶ 132-133 (holding "[a]lthough predictive dialers are more advanced than earlier autodialers, '[t]he basic function of such equipment *** has not changed—the capacity to dial numbers without human intervention.'… 'Therefore, a predictive dialer falls within the meaning and statutory

---

[2] Note that such stipulation is limited for purposes of this litigation only.

definition of 'automatic telephone dialing equipment' and the intent of Congress."). This definition has since been reinforced by the FCC in numerous subsequent Orders. *See* ACA Declaratory Ruling ¶ 12 (wherein the [FCC] affirmed its conclusion that "a predictive dialer constitutes an [autodialer] and is subject to the TCPA's restrictions); 2015 FCC Order ¶ 10 ("we also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason"). Moreover, such interpretation by the FCC has repeatedly been upheld by the courts. *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 1409-293 (FCC 2003)("Though a predictive dialer might not fit squarely within the TCPA's statutory definition of an ATDS, the FCC found that it is the sort of automated equipment Congress intended to address through the TCPA because it has the 'capacity to dial numbers without human intervention.' Accordingly, the FCC determined that a predictive dialer is an ATDS"); see also *Patterson v. Ally Fin., Inc.*, No. 3:16-cv-1592-32JBT (M.D. Fla., Jan. 31, 2018) (Order). Accordingly, pursuant to the Joint Stipulation of Facts, the dialer generated calls made by Defendant with equipment with the capacity to dial predictively sufficiently meet the definition of an ATDS and are subject to liability under the TCPA.

### iii. Defendant's Calls Were Not Made For "Emergency Purposes."

The Defendant does not contest that all phone calls to the Plaintiff's cellular telephone were made for non-emergency purposes. **Exhibit H**, 12:24-13:5; **Exhibit I**.

### iv. The Plaintiff is the Called Party.

Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.,* 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014); see also *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-cv-11505, 2011 WL 6018403 (E.D. Mich. Nov. 7, 2011). The telephone number (615) ***-6261 belongs to the Plaintiff. **Exhibit A**, ¶ 3; **Exhibit B**,

14:4-5; *see* Complaint [Doc. 1] ¶ 13. Plaintiff was the recipient of all the telephone calls from the Defendant. **Exhibit A**, ¶ 3; **Exhibit B**, 14:4-5; *see* Complaint [Doc. 1] ¶ 13.

> **v. On More Than One Occasion, The Plaintiff Effectively Revoked Any "Prior Express Consent" Defendant May Have Believed It Had To Call Her Cellular Telephone Using An ATDS and/or Pre-Recorded Voice for Purposes of Collecting a Debt.**

Following the FCC's 2015 Order, it is unquestioned that "[c]onsumers may revoke consent to be called by 'any reasonable method' that 'clearly expresses a desire not to receive further messages.'" *Rodriguez v. DFS Servs., LLC*, No. 8:15-cv-2601-T-30TBM, 2016 WL 369052 (M.D. Fla. Feb 1., 2016) quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7966; see also *Bally v. First Nat'l Bank of Omaha*, No. 17-10632, 2017 WL 4841420, at *2 (E.D. Mich. Oct. 26, 2017) (holding that a party "may revoke his consent…by clearly expressing his or her desire not to receive further calls"); see also *Patterson v. Ally Fin., Inc.*, No. 3:16-cv-1592-32JBT (M.D. Fla., Jan. 31, 2018) (Order). "[A]ny reasonable method [includes] orally or in writing." 30 FCC Rcd. at 7966.

During her deposition on November 10, 2017, the Plaintiff testified that she told Defendant on numerous occasions to stop calling her and call her daughter ("Tara Ammons") instead. When asked about the first time she told Defendant to stop calling, Plaintiff specifically identified December of 2015. **Exhibit B**, 52:23-54:25. Upon Defendant's counsel's review of the account notes, Plaintiff was able to specifically identify December 22, 2015 as a date of revocation:

> "MRS. KRASOVEC: Okay. So I have a note in – in the account that on December 22nd, 2015, at 9:51 a.m., and it's showing as an outbound call to your cell phone, and the note reads, "Cobuyer to have an extension, but extension had been closed. Advised the customer about the status. She don't have any idea why the cobuyer is past due. She can't help the cobuyer. She has her own car notes.

8

Call Tara other cell phone number to have an arrangement but didn't pick up. Will call the cobuyer. She didn't have any where the cobuyer is." Does that sound accurate?

MRS. AMMONS: Yes.

MRS. KRASOVEC: Did you provide Tara's phone number and ask to call her but not tell them to stop calling you at that point?

…

MRS. AMMONS: On this particular day you're asking me did I tell them to stop calling me?

MRS. KRASOVEC: Yes, on December 22nd, 2015.

MRS. AMMONS: Like I said, every time I talked to them, I did tell them that. So I'm going to say yes, I did.

MRS. KRASOVEC: Okay. So this December 22nd, 2015, call, does that sound like the call that you're referring to in Paragraph 20 and 21 of the complaint?

MRS. AMMONS: Yes.

MRS. KRASOVEC: And your testimony today is that you asked Ally to stop calling you on that date?

MRS. AMMONS: I would say yes, from what I remember."

**Exhibit B**, 55:1-56:9.

As outlined above, the Plaintiff's allegation that she told the Defendant to "stop calling" her cellular telephone number in or about December of 2015 is supported not only by her own testimony, but also by the Defendant's SHAW/account notes showing that Mrs. Ammons directed the agent to call her daughter, Tara, which is consistent with both her testimony and the allegations contained within the Complaint regarding her numerous revocations of consent. **Exhibit F**, ALLY_000167; Complaint [Doc. 1] ¶¶ 20-21.

In support of Plaintiff's contention that she revoked consent on December 22, 2015, it's particularly noteworthy that Plaintiff specifically alleged in her Complaint that she told the Defendant to stop calling her in or around December of 2015 without having the benefit of Defendant's account notes or even her own wireless records at the time. Moreover, Plaintiff (prior to seeing any account notes from Defendant) specifically alleged that she directed Defendant's agent/representative to contact her daughter at the time she revoked any initial consent Defendant may have believed it had. *See* Complaint [Doc. 1] ¶¶ 20-21. Accordingly,

9

the record is clear that any initial, express consent that Defendant may have believed it had to call Plaintiff utilizing prerecorded messages and/or autodialing technology was effectively revoked during this conversation on December 22, 2015. Defendant cannot offer any evidence to rebut the December 22, 2015 revocation other than the absence of an account note – which is no more than a mere "summary of the conversation" and not a word for word transcription. **Exhibit H**, 22:8-13.

After December 22, 2015, the Defendant made at least five hundred eighteen (518) dialer generated calls (in addition to five (5) automated text messages) to Plaintiff's cellular telephone number utilizing equipment with the capacity to operate as a predictive dialer. In light of the above, the Plaintiff requests summary judgment as to each of these five hundred twenty three (523) dialer generated calls/texts[3] constituting separate violations of the TCPA and seeking the "strict liability" statutory minimum of $500 for each violation, thus entitling the Plaintiff to $261,500.

Even though unlikely, if the Court is unable to make a determination that Plaintiff revoked any initial consent Defendant may have believed it had prior to December 22, 2015, Plaintiff unquestionably revoked any such consent during a conversation with Defendant's agent "Dyrell Body" on September 22, 2016. As it concerns this conversation, the Plaintiff testified that she spoke with a "Mr. Body" and advised him on that date she "had previously requested that Ally stop calling" her. **Exhibit B**, 56:10-24. This testimony supports Plaintiff's allegations within the Complaint [Doc. 1] and is further corroborated by Defendant's agent's own notations on the account. Specifically, "Mr. Body" noted that he received an inbound call from Plaintiff and Plaintiff stated "do not call her she is not the buyer and payer". **Exhibit F**, ALLY_000132.

---

[3] For the purposes of the TCPA, automated text messages are treated in the same manner as "calls". *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370-71 (6th Cir. 2015).

10

Moreover, at that time, "Mr. Body" even changed a *permanent* note on the account to show "***6261 dnc buyer!!!".[4]  *Id.*  Further, Defendant's own corporate representative, Diane Accurso, testified that "dnc" stands for "do not call".  **Exhibit H**, 31:12-17.

Defendant cannot refute that the Plaintiff effectively revoked any initial, express consent that Defendant may have believed it had to place automated calls to the Plaintiff's cellular telephone number following this conversation on September 22, 2016.  The Defendant chose to not maintain the recorded conversation of September 22, 2016. **Exhibit H**, 35:10-23.  Additionally, prior to the FRCP 30(b)(6) deposition, Ms. Accurso did not even attempt to contact Mr. Body regarding his memory of such conversation or any tendencies regarding his contemporaneous notes (and, in fact, she testified that she's "*never* reached out to an agent on a legal issue").  **Exhibit H**, 50:8-10 (emphasis added).  Moreover, she testified that she did not know who he was, she never had any sort of interaction with him, and was unable to say if was even still employed by the Defendant.  **Exhibit H**, 32:14-23.  Such a weak and, frankly, unfounded defense cannot overcome sworn testimony, made under penalty of perjury, from the Plaintiff and as corroborated by Defendant's own SHAW/account notes.  See *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 726 (S.D. N.Y. 2015) (granting summary judgment in Plaintiff's favor where "Plaintiff's phone records corroborate her claim and Defendant's absence of evidence fails to contradict it.").

Based on the foregoing, it is clear that there is no genuine issue of material fact as it concerns Plaintiff's effective revocation on September 22, 2016.  After this date, Defendant made two hundred thirty five (235) dialer generated calls to Plaintiff's cellphone number. In light of the above, at a minimum, the Plaintiff requests partial summary judgment as to each of these

---

[4] Plaintiff will further elaborate as to the significance of this "permanent account note" later in this memorandum.

11

two hundred thirty five (235) dialer generated calls constituting separate violations of the TCPA and is seeking the "strict liability" statutory minimum of $500 for each violation, thus entitling the Plaintiff to $117,500.[5]

**b. The Plaintiff is Entitled to Judgment As A Matter Of Law As To All Dialer Generated Calls Made To Plaintiff's Cell Phone From Defendant Without Plaintiff's Consent.**

Plaintiff anticipates that Defendant will argue that even if the Court finds Defendant liable under the TCPA, it should only be liable for the dialer calls "made" as opposed to the dialer generated calls initiated to Plaintiff's cell phone (615) ***-6261. While the Plaintiff believes the case law is clear and mostly unanimous on this issue, the Plaintiff will nevertheless address the issue as Defendant is likely to mislead this Court by arguing that those dialer generated calls to the Plaintiff's cell phone causing her phone to ring but otherwise went unanswered are not actionable under the TCPA.

As has been held by numerous courts, "the intended recipient need not have answered the calls. The act of placing the calls triggers the statute." *Yount v. Midland Funding, LLC*, No. 2:14-CV-108, 2016 WL 55481, at *8 (E.D. Tenn. Feb. 10, 2016) (adopting the holding in *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010); see also *Tillman v. Ally Fin. Inc*., No. 2:16-cv-313-FTM-99CM, 2017 WL 5187748, at *4 (M.D. Fla. Nov. 9, 2017) (citing *Brathre v. Navient Solutions, Inc.*, 249 F. Supp. 3d 1283, 1286 (M.D. Fla. 2017) (quoting *Fillichio*); see also *King v. Time Warner Cable*, 2015 U.S. Dist. LEXIS 88044, at *12 (S.D.N.Y. 2015) (holding that the Defendant "violated the statute each time it placed a call using its ATDS without consent, regardless of whether the call was answered by a person, a machine, or not at all).

---

[5] While Plaintiff strongly believes each of these violations to be knowing and willful and, thus, subject to treble damages, Plaintiff will further expound on this later in her Motion.

12

During the deposition of Defendant's corporate representative, Diane Accurso, on October 26, 2017, Ms. Accurso testified that Defendant "made" one hundred five (105) dialer calls to Plaintiff's cell phone after December 22, 2015. **Exhibit H**, 13:16-18. When pressed on what she understood "made" calls to mean, Ms. Accurso testified that she was only including the dialer generated calls where an agent was either connected to the Plaintiff, connected to the Plaintiff's voicemail and actually left a voicemail, or text message was sent. **Exhibit H**, 76:6-18. Thus, despite being placed by the exact same telephone dialing system, Defendant's "calls made" count did not include any calls that were placed by their dialing system, passed through the cellular network, and rang to Plaintiff's cell phone but were not otherwise answered by Plaintiff (i.e. missed calls) and/or did not result in Defendant leaving a voice mail. Regardless of whether the dialer generated call was answered, went to voicemail, or resulted in a missed call on Plaintiff's cell phone, the capacity of the dialing equipment to dial predictively does not change and Ms. Accurso testified to as much. **Exhibit H**, 77:4-18.

Defendant's SHAW/account notes reflect that Defendant made at least five hundred eighteen (518) dialer generated calls (in addition to five (5) automated text messages) to Plaintiff's cell phone number after December 22, 2015. **Exhibit A**, ¶ 11; **Exhibit C**; **Exhibit F**, ALLY_000076-000167. This count only includes those dialer generated calls that successfully passed through the network (i.e., there is no evidence in Defendant's SHAW/account notes that these calls were either manually dialed, dropped, abandoned, or otherwise unsuccessful in reaching the Plaintiff's cell phone). Accordingly, should the Court find that Plaintiff effectively revoked her initial consent on December 22, 2015, the Defendant should be found liable for all five hundred twenty three (523) dialer generated calls/texts made to Plaintiff's cell phone after this date.

13

Similarly, following Plaintiff's clear revocation of consent on September 22, 2016, Ms. Accurso testified that Defendant "made" (as she defined it) at least twenty six (26) dialer generated calls to the Plaintiff's telephone number at issue with equipment that had the capacity to dial predictively. **Exhibit H**, 13:19-21. Again, Ms. Accurso's testimony only relates to calls that were answered or resulted in Defendant leaving a voicemail. As discussed above, Defendant's SHAW/account notes reveal that Defendant actually made at least two hundred thirty five (235) dialer generated calls to Plaintiff's cellular telephone. Accordingly, should the Court find that Plaintiff effectively revoked consent on this date, Defendant should be found liable for at least two hundred thirty five (235) dialer generated calls to Plaintiff's cell phone.

Based on the foregoing, this Court should find Defendant liable for all dialer generated calls/texts made to Plaintiff's cell phone number without her consent and grant Plaintiff's Motion for Partial Summary Judgment as outlined above.

### c. The Plaintiff Is Entitled to Judgment as a Matter of Law As to Defendant's Willful or Knowing Violations of The TCPA.

In addition to the "strict liability" damages afforded by the TCPA, the statute goes on to provide "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C). "The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute. Cf. *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.2011) ("The [Act] does not require any intent for liability except when awarding treble damages."). For example, to violate section 227(b)(1)(A)(i), a defendant must know that he is using an

14

"automatic telephone dialing system" to place a "call," and that the call is directed toward an "emergency" line. Id. § 227(b)(1)(A)(i)." *Lary v.Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015); see also *Charvat v. NMP, LLC*, 656 F. 3d 440 (6th Cir. 2011) (holding that a "person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements of the Telephone Consumer Protection"); see also *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (quoting *Alea London Ltd*., 638 F. 3d at 776 ("[i]mportantly though, the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct")).

Plaintiff strongly believes that all five hundred twenty three (523) calls/texts were made willfully and/or knowingly in violation of the TCPA. Defendant voluntarily chooses to maintain recordings for only ninety (90) days and then, unsurprisingly, elects to defend its liability based on the absence of the record. **Exhibit H**, 35:10-23. Pursuant to this policy, Defendant could simply continue to ignore its consumers' requests to stop calling, have their agent/representatives continue to take minimal notes during conversations with its customers, and then simply say they were unaware of any do not call requests in order to avoid liability.

As described above, on December 22, 2015, Plaintiff unequivocally let Defendant know they should stop calling her and should call her daughter instead. Despite this demand, Defendant continued to call Plaintiff's cell phone using equipment that has the capacity to operate as a predictive dialer. As stated above, Defendant's absence of records regarding the Plaintiff's request to stop calling simply cannot overcome Plaintiff's sworn testimony, made under penalty of perjury, and as corroborated by Defendant's own SHAW/account notes. See *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 726 (S.D. N.Y. 2015) (granting summary judgment in Plaintiff's favor where "Plaintiff's phone records corroborate her claim and

15

Defendant's absence of evidence fails to contradict it."). Accordingly, Defendant should be held liable for such willful and/or knowing violations of the TCPA and Plaintiff should be entitled to $1,500 per call for all five hundred twenty three (523) dialer generated calls/texts for a total of $784,500.

Even if the Court believes that the December 22, 2015 revocation should be decided by a jury, the two hundred thirty five (235) dialer generated telephone calls made by Defendant to the Plaintiff's cellular telephone using an automated telephone dialing system (including a predictive dialer) after September 22, 2016 were "willful or knowing" in nature, thus entitling the Plaintiff to treble damages, or $1,500, per call for a total of $352,500. *See* 47 U.S.C. §227(b)(3)(C).

Here, there is a plethora of evidence to support this conclusion. As a threshold matter, the Defendant will not dispute that all of the calls to Plaintiff's cell phone number were for non-emergency purposes using dialing equipment that has the capacity to operate as a predictive dialer. **Exhibit G**; **Exhibit H,** 12:24-13:5; **Exhibit I**. It is also undisputed that the Defendant's own account/SHAW notes reflect a clear "do not call" request made by the Plaintiff on September 22, 2016 – consistent with Ms. Ammons' testimony. **Exhibit F,** ALLY_000132**.** When questioned about this specific account note "dnc", Defendant's own corporate representative testified that her assumption was it meant "do not call buyer". **Exhibit H,** 31:12-17.

Further, as mentioned previously, Defendant's agent "Dyrell Body" entered a permanent note on the account "***6261 dnc buyer!!!". **Exhibit F**, ALLY_000132. This permanent account note's significance goes beyond the fact that it's clear evidence of Ms. Ammons' request to stop the calls to her cell phone. Rather, the fact that it is a permanent account note means that anytime an agent was connected on a call (i.e., with the Plaintiff herself or with the Plaintiff's

16

voicemail) to Plaintiff's cellular telephone number ending in -6261, this permanent note would "stand out on [the] first screen that the collector would see so they wouldn't have to go through notes." **Exhibit H**, 73:21-74:2. Thus, when Ms. Accurso testified that there were at least twenty six (26) "made" calls after September 22, 2016 (i.e., there were at least twenty six (26) calls where Defendant's agent either spoke with the Plaintiff or left a voicemail on the Plaintiff's cellular telephone) that means Defendant's agents would have seen this note reflecting a do not call request at least twenty six (26) different times and subsequently chose at least twenty six (26) different times to do nothing to stop these dialer generated calls to the Plaintiff's cell phone. Based on the foregoing, it is readily apparently that Defendant knew as early as September 22, 2016 that it did not have Plaintiff's consent to place autodialed and/or prerecorded messages to Plaintiff's cell phone number for the purposes of collecting a debt and/or servicing the account, yet knowingly and/or willfully decided to do so anyway. Such blatant disregard of Plaintiff's request to stop the dialer generated calls can only be considered a knowing and/or willful violation of the TCPA.

In light of these facts and the unambiguous and unequivocal revocation of consent described above (as well as the Plaintiff demanding on numerous occasions that the Defendant simply "quit calling"), treble damages as to the knowing or willful nature of the Defendant's TCPA violations is appropriate. See *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 901 (E.D. Mich. 2012) (awarding triple damages for all phone calls and prerecorded messages Defendants placed to Plaintiff's cellular phone after Plaintiff first notified Defendants that they had the wrong number); see also *Coniglio v. Bank of Am., N.A.*, 2014 WL 5366248, at *5 (M.D. Fla. 2014) (overruled on other grounds) (noting that allegations of unambiguous communications requesting cessation of direct communication with a TCPA Claimant were

17

adequate to establish that the TCPA defendant's conduct was knowing and willful and therefore treble damages of $1,500 per call was appropriate). Accordingly, summary judgment on the knowing or willful nature of Defendant's TCPA violations is appropriate.

As such, this Court should grant summary judgment in favor the Plaintiff for $1,500 for each of the five hundred twenty three (523) dialer generated calls/texts made by the Defendant for a total of $784,500. As mentioned above, if the court feels that the issue of treble damages on the calls between December 22, 2015 and September 22, 2016 should be left for a jury, then it should reserve on such issue and grant partial summary judgment in favor of the Plaintiff for the two hundred thirty five (235) dialer generated calls made by the Defendant for a total $352,500 (in addition to $500.00 for each dialer generated call made by Defendant to Plaintiff's cellular telephone number with Plaintiff's consent between December 22, 2015 and September 22, 2016) that were unquestionably done so knowingly and/or willfully.

## CONCLUSION

Based on the foregoing, there is no genuine issue of material fact precluding partial summary judgment in favor of the Plaintiff as a matter of law with regards to Defendant's liability for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) for at least the five hundred twenty three (523) dialer generated telephone calls/texts made by the Defendant to Plaintiff's cellular telephone using an ATDS (including a predictive dialer) without her "express consent." Thus, Plaintiff is entitled as a matter of law to $500 for each of the five hundred twenty three (523) calls/texts for a total of $261,500. Should this Court find that such calls/texts were made knowingly and/or willfully, Plaintiff is entitled as a matter of law to $1,500 for each call/text for a total award of $784,500.

18

Should the Court choose to leave the issue of treble damages to the jury for the dialer generated calls made between December 22, 2015 and September 22, 2016, Plaintiff is entitled as a matter of law to $496,500, reflective of $500.00 for the two hundred eighty eight (288) dialer generated calls/texts between December 22, 2015 and September 22, 2016 and $1,500.00 for each of the two hundred thirty five (235) dialer generated calls after September 22, 2016.

With that said, the record is clear that there is no genuine issue of material fact precluding partial summary judgment in favor of the Plaintiff as a matter of law with regards to the "willful or knowing" nature of the Defendant's violations of the TCPA after September 22, 2016. Thus, at a minimum, Plaintiff is entitled as a matter of law to $1,500 for at least each of the two hundred thirty five (235) dialer generated calls for a total of $352,500 and would respectfully request for the Court to allow the issue of prior revocation and treble damages for the calls between December 22, 2015 and September 22, 2016 to go before a jury.

Alternatively, if the Court is not prepared to find these violations after Plaintiff's September 22, 2016 revocation of consent were made knowing and/or willfully, Plaintiff would request at a minimum her "strict liability" damages of $500 per call for each dialer generated call made after this date for a total of $117,500 and reserve on the issue of treble damages and prior revocations. Plaintiff would further respectfully request that the Court reserve on the issue of punitive damages.

Dated this 2nd day of February, 2018.

Respectfully submitted,

*/s/ Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No.: 105998
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 N. Franklin Street, Suite 700

19

Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Primary: SHill@ForThePeople.com
Secondary: LCrouch@ForThePeople.com
*Attorney for Plaintiff*
*Admitted Pro Hac Vice*

and        ***/s/ Octavio Gomez***
           Octavio "Tav" Gomez, Esquire
           Florida Bar No.: 0338620
           MORGAN & MORGAN, TAMPA, P.A.
           One Tampa City Center
           201 N. Franklin Street, Suite 700
           Tampa, FL 33602
           Telephone: (813) 223-5505
           Facsimile: (813) 223-5402
           Primary: TGomez@ForThePeople.com
           *Attorney for Plaintiff*
           *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2018, the foregoing was filed electronically in accordance with the Court's guidelines, using the Court's CM/ECF system, and a copy of which was served via electronic mail to:

**Scott Goldsmith, Esq.**                    **Robert F. Springfield, Esq.**
Alexandra N. Krasovec Esq.                   Burr & Forman, LLP.
**Eric J. Troutman, Esq.**                   420 N. 20th Street, Suite 3400
Dorsey & Whitney, LLP                        Birmingham, AL 35203
600 Anton Boulevard, Suite 200               Fspringfield@burr.com
Costa Mesa, CA 92626                         *Attorney for Defendant*
Goldsmith.scott@dorsey.com
Krasovec.alex@dorsey.com
Troutman.eric@dorsey.com
*Attorneys for Defendant*


**Samuel Aitken Morris, Esq.**               ***/s/ Shaughn C. Hill***
Burr & Forman, LLP                           SHAUGHN C. HILL, ESQUIRE
511 Union Street, Suite 2300                 Florida Bar No. 0105998
Nashville, TN 37219                          *Admitted Pro Hac Vice*
smorris@burr.com
*Attorney for Defendant*

20