IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARTHA AMMONS, | ) |
| Plaintiff, | ) ) ) Civil Action No. 3:17-cv-00505 |
| v. | ) ) District Judge Waverly D. Crenshaw, Jr |
| ALLY FINANCIAL INC., | ) Magistrate Judge Joe Brown ) |
| Defendant. | ) ) |

### DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING *ACA, INT'L*

**I.     INTRODUCTION**

Defendant Ally Financial, Inc. ("Ally") appreciates the opportunity to brief the impact of *ACA Int'l v. FCC*, No. 15-1211, 2018 U.S. App. LEXIS 6535 (D.C. Cir. Mar. 16, 2018)("*ACA Int'l*") on this matter.

As shown below, Ally submits the following:

1.  Each holding made in *ACA Int'l* is binding on this Court pursuant to the Hobbs Act and supersedes any previous Federal Communication Commission ("FCC") ruling or court decision applying the same;

2.  *ACA Int'l* confirms that the FCC's 2015 TCPA Omnibus Order did not alter common law contractual principles on the issue of consent;

3.  *ACA Int'l* does not hold that contractual consent is revocable;

4.  *ACA Int'l* affirms the highly factual "totality of the circumstances" approach to assessing a valid revocation; and

5.  *ACA Int'l* invalidates the FCC's previous orders finding that calls from predictive

dialers come within the ambit of the TCPA.

## II. *ACA INT'L* IS BINDING AUTHORITY ON ALL DISTRICT COURTS

"The Hobbs Act provides a framework for determining the validity of final FCC orders, a framework that grants exclusive jurisdiction to the circuit courts." *Peck v. Cingular Wireless, Ltd. Liab. Co.*, 535 F.3d 1053, 1057 (9th Cir. 2008); 28 U.S.C. § 2342(1) ("The court of appeals...has exclusive jurisdiction to enjoin, set aside, suspend (in whole or part), or to determine the validity of – all final orders of the Federal Communications Commission…"). Under this framework, once a challenge to an FCC rule is brought before a particular circuit court, that court is vested with the ultimate authority to opine upon and interpret the validity of the Commission's ruling, and the circuit court's decisions as to the validity of the Commission's rule become "binding outside of the [circuit]." *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017); see also *Alpha Tech Pet, Inc. v. Lagasse, LLC*, Nos. 16 C 513; 16 C 4321, 2017 U.S. Dist. LEXIS 182499 (N.D. Ill. November 3, 2017). Because the challenges to the validity of the FCC's ATDS rulings were properly brought before the D.C. Circuit Court of Appeals, the D.C. Circuit was vested with the exclusive jurisdiction to decide upon the validity of those rules, and its decisions are therefore binding in all other circuits. *Sandusky*, supra; *Peck*, supra. "This result makes sense in light of the procedural mechanism Congress has provided for challenging agency rules… [b]y requiring petitioners to first bring a direct challenge before the FCC, the statute allows this expert agency to weigh in on its own rules, and by consolidating petitions into a single circuit court, the statute promotes judicial efficiency and ensures uniformity nationwide." *Sandusky,* at 467, citing 28 U.S.C. §§ 2112, 2342-43.

### III. *ACA INT'L* CONFIRMS THAT THE FCC'S TCPA OMNIBUS RULING DID NOT ALTER THE COMMON LAW RESPECTING CONTRACTUAL CONSENT

In Plaintiff's Opposition to Ally's Motion for Summary Judgment ("Plaintiff's SJ Opposition") she argues at length that the FCC's 2015 TCPA Omnibus ruling created a "statutory right" to revoke consent that transcends the common law of contract. See Dkt. No. 34 at 8-11. *ACA Int'l* confirms that is not so.

Specifically, the D.C. Circuit Court of Appeal highlights the limitations of the Omnibus ruling as applied to the law of contract: "The ruling precludes unilateral imposition of revocation rules by callers; it does not address revocation rules mutually adopted by contracting parties." *ACA Int'l* at *43. It goes on to specify that "[n]othing in the Commission's order thus should be understood to speak to the parties' ability to agree upon revocation procedures." *Id.*

As the FCC's 2015 TCPA Omnibus ruling may not be applied to bar contractual revocation provisions, *a fortiori,* it cannot be applied to bar or limit contractual consent clauses—the ruling simply does not address contractual consent clauses of any kind. And whatever "statutory right" to revoke Plaintiff believes exists, it is plainly limited by contractual provisions. *Id.* This merely confirms the accuracy of the FCC's observation that a consumer's right to revoke consent is "consistent with"—i.e. co-extensive with— the consumer's common law rights. Plaintiff's SJ Opposition at p. 9. As *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017) ("*Reyes*") demonstrates, however, that common law right is limited by the contracts that consumers sign. *Reyes* at 58-59.

*ACA Int'l,* therefore, confirms that the "right" to revoke consent articulated by the FCC remains subject to the general law of contract.

### IV.     *ACA INT'L* DID NOT HOLD THAT CONTRACTUAL CONSENT IS REVOCABLE

It is elementary that the impact of an appellate ruling is limited to the facts and issues before it.  See *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("cases are not authority for propositions not considered").

As already pointed out, the FCC's 2015 TCPA Omnibus Ruling did not address contractual consent or revocation provisions. See *Reyes* at 56-57.  Not surprisingly, therefore, *ACA Int'l* does not speak to the enforceability of contractual consent or revocation provisions, except to note the inapplicability of the 2015 TCPA Omnibus Ruling to parties' right to contract.

Nonetheless, Plaintiff will surely quote the D.C. Circuit Court of Appeal to the effect that: "It is undisputed that consumers who have consented to receiving calls otherwise forbidden by the TCPA are entitled to revoke their consent."  *ACA Int'l* at *40. While this language is unnecessarily broad, it should not be mistaken for a conclusion by the D.C. Circuit Court of Appeal that *all* forms of consent can *always* be revoked.  Again, *ACA Int'l* did not explore issues of contractual consent, did not analyze common law, and did not purport to issue a comprehensive ruling on the interplay between the TCPA and contractual consent. So the Court's observation respecting the relative positions of the parties as to the FCC's general conclusion that consent can sometimes be revoked is not persuasive or binding authority on the subject of whether contractual consent can always be revoked.[1]

---

[1] Notably the Section of the 2015 TCPA Omnibus Ruling cited to by *ACA Int'l* involves the constitutional dimensions of the "right" to revoke, and does not mention or address private contractual agreements on the subject. See *ACA Int'l* at *40-41, citing 2015 Declaratory Ruling, 30 FCC Fcd. At 7996 ¶ 62.

4

### V. *ACA INT'L* AFFIRMS THE HIGHLY FACTUAL "TOTALITY OF THE CIRCUMSTANCES" APPROACH TO ASSESSING REVOCATION

As Ally argued in its Opposition to Plaintiff's Motion for Summary Judgment ("Ally's SJ Opposition"), analysis of effective revocation turns on an assessment of the "totality of the facts and circumstances." See Ally's SJ Opposition (Dkt. No. 85) at p. 13, citing *Ruffrano v. HSBC Fin. Corp.*, 2017 U.S. Dist. LEXIS 132674, at *44, 46.

In *ACA Int'l,* the D.C. Circuit Court of Appeal confirmed that the totality of the circumstances test is the proper one to be employed in assessing the reasonableness of the means utilized to revoke consent. See *ACA Int'l*, at *41. The Court of Appeal set forth a non-exclusive list of factors to consider including: i) "whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burden"; and ii) "whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request… in that circumstance." *Id.*

The specific factors identified by *ACA Int'l* are not particularly valuable here. Ally has implemented mechanisms to effectuate a valid revocation where a customer plainly and clearly asks for calls to cease. Plaintiff contends she took advantage of that procedure but the evidence refutes that position. See Ally's Additional Disputed Facts (Dkt. No. 90) Nos. 28-37. Similarly, Plaintiff contends that she had a reasonable belief that she could ask Ally's agents to cease calls—which, but for her contractual provision to the contrary, would be true—but, again, the evidence does not clearly demonstrate that she asked for calls to stop. *Ibid.*

Indeed, the totality of other circumstances in this case strongly suggest that the mere phrase "stop calls"—if it was spoken at all—would not have been sufficient to clearly revoke consent anyway. Again, context matters. When a customer says "I want you to remove me from the account and stop calling me" is that a valid revocation or is it a statement of the consumer's

5

desire to no longer be responsible for their contractual duties?  Taking the phrase "stop calling me" out of context makes it seem as if the purpose of the statement is to revoke consent, but Plaintiff has already admitted that the purpose of her call with Mr. Body, for instance, was to have herself removed from the account; not to request that calls stop. See Ally's Additional Disputed Facts (Dkt. No. 90) Nos. 31-34.  While a jury *might* find that she wanted calls to stop regardless of whether or not she remained liable on the finance agreement, it might also find that the statement "stop calling me" was not an instruction but merely an articulation of the animating reason behind her *actual* request—which was to have herself removed from the contract.  It is perfectly logical to infer, for instance, that Plaintiff would not have wanted Ally to cease calling her if she was to remain liable on the contract—then she might have no idea that her credit was being impacted or that other enforcement actions were taking place.

To be sure, *ACA Int'l* also doubles down on the unyielding rule that a revocation must "*clearly* express[] a desire not to receive further messages."  *ACA Int'l*, at *41 (Emphasis Added).  The clarity required to effectuate revocation must also turn on the facts and circumstances of each case and, as cases such as *Herrera v. First Nat'l Bank of Omaha, N.A.,* 2017 U.S. Dist. LEXIS 200103, at *2, demonstrate, even seemingly clear cut phrases—such as "stop calling me"—can pale against the broader tapestry of circumstance suggesting that a revocation is not really what was intended.

Pulling it all together, *ACA Int'l* plainly invites the finder of fact to examine all pertinent circumstances in assessing the validity of a claimed revocation.  For the reasons explained in Ally's SJ Opposition, performing such an examination in this case raises myriad triable issues which are not suitable for resolution at the summary judgment stage.

6

## VI. *ACA INT'L* INVALIDATES THE FCC'S PREVIOUS ORDERS FINDING THAT PREDICTIVE DIALERS COME WITHIN THE AMBIT OF THE TCPA

Ally has already addressed *ACA Int'l*'s impact on the FCC's previous predictive dialer rulings and will not repeat those arguments. In short, the FCC's predictive dialer rulings have withered on the vine and are of no force and effect pending further action by the Commission. See Ally's SJ Opposition at p. 16-18.[2]

Since Ally's SJ Opposition was filed, at least one court has come to the same conclusion. In *Marshall v. CBE Group, Inc.*, Case No. 2:16-cv-02406-GMN, 2018 U.S. Dist. LEXIS 55223 (D. Nv. March 30, 2018) ("*Marshall*") the Court held directly that: "Plaintiff cannot rely on the FCC's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers, as is the case with some predictive dialers." *Marshall* at *17. This is true because, in the *Marshall* Court's view, *ACA Int'l* "explicitly rejected this 'expansive' interpretation of the TCPA, particularly as that definition pertained to systems that may not, in fact, have the capacity to dial randomly or sequentially." *Id., citing ACA Int'l*, at *11.

Since Plaintiff in this case has offered no evidence that Ally's dialers have the capacity to dial randomly or sequentially her summary judgment motion must surely be denied.[3]

---

[2] Ally acknowledges that the Court appears to express a conclusion that predictive dialers *per se* qualify as an ATDS under the TCPA in its recent order Granting Plaintiff's Motion to Dismiss Ally's Counterclaim. ("Counterclaim Dismissal Order") See Dkt. No. 104 at p. 7. As Ally did not brief the issue of predictive dialers with respect to the underlying motion, and as the Court does not cite any authority for the proposition, Ally asks the Court to vacate that portion of the Counterclaim Dismissal order or otherwise depart from it when passing on the issue more substantively in connection with the Plaintiff's Motion for Summary Judgment.

[3] Notably, Plaintiff had the opportunity to address this issue in her Reply in Support of Plaintiff's Summary Judgment Motion ("Plaintiff's Reply") but used it only to belittle Ally's position as "incorrect and deliberately misleading." Plaintiff's Reply, Dkt No. 100 at p 5.

## VII. CONCLUSION

For the reason set forth above, *ACA Int'l* is binding upon this court and supports Ally's motion for summary judgment while undermining the positions in Plaintiff's brief.

Respectfully submitted this 11th day of April, 2018.

                                      */s/ Eric J. Troutman*
                                      Eric J. Troutman (*pro hac vice*)
                                      WOMBLE BOND DICKINSON LLP (US)
                                      3200 Park Center Drive, Suite 700
                                      Costa Mesa, California 92626
                                      Telephone: (657) 266-1043
                                      Email: Eric.Troutman@wbd-us.com

                                      R. Frank Springfield (BPR # 025833)
                                      Samuel A. Morris (BPR # 034878)
                                      BURR & FORMAN LLP
                                      420 North 20th Street, Suite 3400
                                      Birmingham, Alabama 35203
                                      Telephone: (205) 251-3000
                                      Facsimile: (205) 458-5100
                                      Email: fspringfield@burr.com

                                      BURR & FORMAN, LLP
                                      222 Second Avenue South, Suite 2000
                                      Nashville, TN 37201
                                      Telephone: (615) 724-3200
                                      Facsimile: (615) 724-3358
                                      Email: smorris@burr.com

                                      *Counsel for Defendant Ally Financial Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Octavio "Tav" Gomez, Esquire
>Shaughn C. Hill, Esquire
>Frank H. Kerney, III, Esquire
>MORGAN & MORGAN, TAMPA, P.A.
>One Tampa City Center
>201 North Franklin Street, 7th Floor
>Tampa, FL 33602
>Email: tgomez@forthepeople.com
>Email: shill@forthepeople.com
>Email: fkerney@forthepeople.com
>
>Mark A. Lambert, Esq.
>MORGAN & MORGAN
>1 Commerce Square, 26th Floor
>Memphis, TN 38103
>Email: mlambert@forthepeople.com
>
>*Attorneys for Plaintiff Martha Ammons*

This 11th day of April, 2018.

>*/s/ Eric J. Troutman*
>Eric J. Troutman